IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANTHONY SCOTT CAPE,                    )        No. C 10-5688 WHA (PR)
                                       )
                Petitioner,            )
                                       )        **ORDER DENYING PETITION FOR WRIT**
        v.                             )        **OF HABEAS CORPUS AND**
                                       )        **CERTIFICATE OF APPEALABILITY**
DIRECTOR OF CORRECTIONS,               )
                                       )
                Respondent.            )
                                       )
_____       )

## INTRODUCTION

Petitioner Anthony Scott Cape, a California prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus challenging his conviction pursuant to 28 U.S.C. 2254. Respondent was ordered to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and petitioner filed a traverse. For the reasons set forth below, the petition is **DENIED**.

## STATEMENT

### I.    PROCEDURAL BACKGROUND

In 2008, a Lake County Superior Court jury convicted petitioner of kidnapping, first-degree robbery, assault with a deadly weapon, and making criminal threats. *See* Cal. Penal Code §§ 207(a), 211, 245(a)(1), 422. The trial court sentenced petitioner to a term of thirteen years in state prison, consisting of the upper term of eight years for kidnapping, with consecutive terms for robbery, assault with a deadly weapon, making a criminal threat, and for petitioner's prior felony prison terms (Ex. 3 at 2). The California Court of Appeal affirmed his conviction and

sentence (Ex. 9), denied his petition for a rehearing (Ex. 10), and denied his petition for habeas

corpus (Ex.12).  The California Supreme Court denied his petition for review (Ex. 14).

## II.    FACTUAL BACKGROUND

In December 2007, James Miller (Miller) and Travis Tonne drove to Clearlake,

California, in a rented Nissan Altima in order to purchase marijuana.  Miller and Tonne met

Buffey Herman and Priest Martinez and then they went to Herman's house.  Herman thought

something might be "going on" at the house, so she took her children and left.  Herman briefly

went back inside to retrieve something from her bedroom and, before leaving again, she saw

petitioner in her walk-in closet.

Tonne, Miller, and Martinez entered the house, and Tonne asked Martinez if he could use

the bathroom.  Tonne left the door open while he used the master bathroom, and after he

finished, petitioner entered the bathroom.  He pushed Tonne into the bathtub, punching him and

kicking him in the head and face with his work boots, demanded money, and threatened to take

Tonne "to meet [his] maker."  Martinez then came in and helped petitioner use zip ties to secure

Tonne's hands and feet.  When petitioner and Martinez left the bathroom for about a minute,

Tonne managed to get his cell phone and called 911.  When they returned, Martinez took the cell

phone and petitioner smashed it.  They then hit Tonne a few more times.  Prior to entering the

bathroom, Martinez had told Miller "to sit down and shut up and don't say nothing," and from

the livingroom Miller heard Tonne being beaten and threatened.  Miller tried to escape in the

Altima, but petitioner found him in the car and told him to get out.

Petitioner and Martinez put Tonne, who was tied up, into the trunk of the Altima.  They

got in the car and told Miller to get in also, and they would drive him home.  Martinez drove,

and Miller told them that he wanted to go home and did not want to be a part of what was

happening._Tonne had a second cell phone from which he called 911.  Miller alerted the other

two to this fact, and Martinez parked the car but they could not find the phone.  Tonne had

opened the trunk of the car from the inside, and petitioner, who had a knife, asked Martinez if he

could stab Tonne.  Martinez drove off, and the trunk lid came down and hit Tonne's head. Tonne's head was bleeding badly, but he managed to roll out of the trunk and onto an embankment where he blacked out.  Petitioner, Martinez and Miller left the car and walked to a gas station, where Herman picked them up and drove them to her house. Tonne awoke the following morning and walked to a nearby business where police and an ambulance were called.

 At Herman's house the next morning, a friend of Herman's arrived to help Herman clean blood from the bathtub and bathroom walls.  Petitioner, Martinez, Miller, and Herman left and took Tonne's luggage, and they dropped Miller off at his grandmother's house.

Timothy Miller (Tim), Miller's father, learned later in December that police were looking for his son.  Petitioner called Miller's father, Tim, looking for Miller, and petitioner described the events to him and acknowledged that Miller was not involved.  Tim drove Miller to the police station, where Miller was taken into custody.

Police found the Altima, with petitioner's palm print on the trunk lid.  They also found the prints of Tonne, Martinez, and Miller in the car, as well as three zip ties nearby.

ANALYSIS

I.    STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*,  537 U.S. 322, 340 (2003).

Under 28 U.S.C. 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000). In this case, the last reasoned opinion is that of the California Court of Appeal.

## II.   PETITIONER'S CLAIMS

As grounds for habeas relief, Petitioner asserts that: (1) the trial court violated his right to due process by failing to instruct the jury on the unreliability of accomplice testimony; (2) receiving consecutive sentences for robbery and making a criminal threat violated his Fifth and Sixth Amendment rights; and (3) counsel was ineffective at sentencing.

### A.   ACCOMPLICE TESTIMONY INSTRUCTION

The prosecution presented testimony from Miller and Herman to support its case. Petitioner claims that the trial court violated his right to due process by failing to instruct the jury that their testimony should be viewed with caution because they were accomplices.

It is not clear that Miller and Herman were accomplices. Miller was initially charged as a co-defendant, but the charges were waived under a grant of use immunity (Ex. 2, vol. 1 at 31). Herman was never charged with a crime, and defense counsel did not argue that she was involved. Even if they were accomplices, however, there is no constitutional requirement that juries be cautioned about an accomplice witness' credibility. The use of accomplice testimony is certainly acceptable under due process. *See United States v. Augenblick*, 393 U.S. 348, 352 (1969) ("When we look at the requirements of procedural due process, the use of accomplice testimony is not catalogued with constitutional restrictions). Indeed, "[t]he uncorroborated testimony of an accomplice is enough to sustain a conviction unless the testimony is incredible

4

or unsubstantial on its face." *United States v. Lopez*, 803 F.2d 969, 973 (1986).

The Supreme Court has not determined, moreover, that when accomplice testimony is used, a cautionary instruction about the reliability of such testimony is constitutionally required. As a result, petitioner's first claim fails on this ground. *See* 28 U.S.C. Section 2254(d)(1) (restricting habeas relief to violations of clearly established federal law determined by the United States Supreme Court). Petitioner cites *People v. Guiuan*, 18 Cal.4th 558 (1998), to support his argument, but that is a state court decision that does not create "clearly established" federal law within the meaning of Section 2254(d)(1).

The Supreme Court does, however, recognize a broader right that criminal defendants must be "afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). The Ninth Circuit has interpreted this broad mandate to include jury instructions on the defense's theory of the case. *See Clark v. Brown*, 450 F.3d 898, 904-05 (9th Cir. 2006) ("[f]ailure to instruct on the defense theory of the case is reversible error if the theory is legally sound and evidence in the case makes it applicable").

The defense theory of the case centered on casting doubt on all the witnesses, including Miller and Herman. The defense attempted to show that none of the witnesses, including Tonne himself, was credible in general; that others present, and not petitioner, were responsible for the assault that occurred; that kicking the victim with a boot could not possibly cause "great bodily injury"; and that Tonne, who had prior drug convictions, wanted to deflect attention from himself by playing the part of the victim (Ex. 2, vol. 2 at 506). Miller and Herman's alleged complicity was not a major part of the defense's case, however. The defense cross-examination of Miller focused minimally on his alleged involvement in the crime and instead dealt mostly with whether Miller actually witnessed petitioner's assault and robbery of Tonne (Ex. 2, vol. 1 at 148-53). The cross-examination of Herman focused on her account of the events leading up to and after the assault, why she left her house when she did, and her surprise at seeing petitioner hiding in her closet (*Id.* at 205-15). Failure to provide an accomplice credibility instruction did

1    not deprive petitioner of a "meaningful opportunity to present a complete defense" because the

2    defense theory was not that Miller and Herman lacked credibility due to being accomplices.

3          In any event, any error from failing to provide the instruction was not prejudicial.

4    Habeas relief can only be granted based upon an error in jury instructions if the error was

5    prejudicial, meaning petitioner can show that it "had a substantial or injurious effect on the

6    verdict." *Beardslee v. Woodford*, 358 F.3d 560, 578 (9th Cir. 2004). Here, there was ample

7    evidence apart from Herman and Miller's testimony to establish petitioner's guilt. Tim Miller,

8    Tonne himself, and other witnesses corroborated Miller's and Herman's testimony (Ex. 1, vol. 1

9    at 100-12). The prosecution also showed that petitioner's hand-prints were on the outside of the

10   car used to kidnap Tonne, which Tonne had rented for the trip, and that zip-ties were found near

11   the car, consistent with Tonne's statement that his hands and feet were zip-tied (Ex. 2, vol. 2 at

12   500). Moreover, the absence of an instruction did not prevent the jury from concluding, if they

13   believed the evidence so warranted, that Miller and Herman were accomplices and were thus

14   biased against petitioner. Therefore, even if the trial court erred by not cautioning the jury on the

15   credibility of Miller and Herman's testimony, the alleged error was not prejudicial.

16         Petitioner, having failed to show that the Court of Appeal's decision was contrary to or

17   an unreasonable application of clearly established federal law, is not entitled to federal habeas

18   relief based on this claim.

19         **B.    CONSECUTIVE SENTENCES**

20         Petitioner's claims that consecutive sentences for robbery and making a criminal threat

21   violated both his Sixth Amendment rights and the Fifth Amendment's double jeopardy

22   prohibition (Trav. 8).

23         **1.    SIXTH AMENDMENT**

24         Petitioner argues that consecutive sentences for robbery and making criminal threats

25   violate the Sixth Amendment, which provides not only a right to a trial by jury during the guilt

26   phase, but requires that "any fact that increases the penalty for a crime beyond the statutory

27

28
                                                6

maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Petitioner may be arguing that imposing consecutive sentences is functionally the same as increasing the penalty beyond the statutory maximum, but a judge's decision to impose consecutive, rather than concurrent, sentences for discrete crimes does not implicate the Sixth Amendment. *Oregon v. Ice*, 555 U.S. 160, 164 (2009) (Sixth Amendment does not exclude state legislature's choice to give concurrent or consecutive sentencing discretion to judge). As the Supreme Court has decided that a judge's choice to impose consecutive sentences does not violate federal law, petitioner's Sixth Amendment argument fails.

### 2. FIFTH AMENDMENT

Petitioner next argues that the state court should have found that the robbery and criminal threats were "indivisible" from the kidnaping, and as a result, he was sentenced twice for the same crime in violation of the Double Jeopardy Clause of the Fifth Amendment. He argues that the robberies and criminal threats had the same objective as the kidnapping and were therefore part of a "single incident of criminal behavior" (Trav. 8).

The Double Jeopardy Clause prohibits multiple punishments for the same crime as well as a second prosecution for the same offense after an acquittal or conviction. *Witte v. U.S.*, 515 U.S. 389, 395-96 (1995). Where multiple crimes occur during the same act or transaction, multiple punishments may not be imposed unless the court determines that the crimes were separate from each other. *Blockburger v. U.S.*, 284 U.S. 299, 304 (1932). Crimes are separate "if each statute requires proof of an additional fact which the other does not." *Id.*

In California, kidnapping occurs when a person "forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county." Cal. Penal Code § 207(a). Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of

7

force or fear." *Id.* § 211.  Making a criminal threat involves a specific, unequivocal threat to commit a crime that will result in death or great bodily injury to another person, such that the person is reasonably placed in fear for his or her own safety or his immediate family's safety.  *Id.* § 422.

A plain reading of the statutes shows that each crime is distinct because each crime has different elements.  Robbery requires a taking of property, while making a criminal threat and kidnapping do not.  Kidnapping involves forcibly detaining a person and taking him somewhere else, which neither robbery nor making a criminal threat requires.  They are all separate crimes for *Blockburger* purposes and can be punished separately without violating the Double Jeopardy Clause.

Petitioner relies on state law doctrines of indivisibility to argue that "[t]he record makes clear that both the robbery and the criminal threats were part of an indivisible course of conduct because there was no separate objective for either" (Trav. 8 (citing Cal. Penal Code § 654 and *People v. Latimer*, 5 Cal.4th 1203 (1993)).  Whether a crime was part of an indivisible course of action under state law is irrelevant to the federal double jeopardy determination.  *Watts v. Bonneville*, 879 F.2d 685, 688 (9th Cir. 1989) ("Nothing in the Constitution prohibits [separate punishments for separate crimes committed in the same act]; indeed, in applying federal law, this court routinely has upheld convictions for multiple crimes aided and abetted by a single course of conduct").  California's divisibility doctrine exceeds what the Constitution requires to prevent double jeopardy, as there is no constitutional prohibition on multiple punishments for separate crimes committed in the same course of action.

Petitioner, having failed to show that the Court of Appeal's decision was contrary to or an unreasonable application of clearly established federal law, is not entitled to federal habeas relief based on this claim.  Respondent's arguments regarding exhaustion and waiver of this claim need not be reached because the claim fails on its merits.

1

       **C.**    **INEFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING**

2

       Petitioner's third claim is that trial counsel should have objected to the court's use of

3

petitioner's prior convictions to support imposing the upper term for kidnaping (Trav. 4, 10-13).

4

The ineffective assistance of counsel violates the Sixth Amendment. *Strickland v. Washington*,

5

466 U.S. 668, 686 (1984). The *Strickland* court specifically declined to decide whether the right

6

to effective assistance of counsel extends to sentencing, however. 466 U.S. at 686. A federal

7

habeas petition, however, must allege that the state court unreasonably interpreted federal law as

8

determined by the United States Supreme Court. 28 U.S.C. 2254(d)(1). There is no clearly-

9

established federal law by the United States Supreme Court that there is a constitutional right to

10

effective assistance of counsel at non-capital sentencing proceedings. *See Cooper-Smith v.*

11

*Palmateer*, 397 F.3d 1236, 1244 (9th Cir. 2005) ("Since *Strickland*, the Supreme Court has not

12

decided what standard should apply to ineffective assistance of counsel claims in the noncapital

13

sentencing context. Consequently, there is no clearly established law in this context.").

14

Consequently, federal habeas relief is not available on such a claim under Section 2254(d)(1).

15

*See id.* Accordingly, petitioner is not entitled to federal habeas relief based on this claim.

16

                                          **CONCLUSION**

17

       For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**.

18

       A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case

19

in which "reasonable jurists would find the district court's assessment of the constitutional

20

claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

21

       The Clerk shall enter judgment in favor of respondent and close the file.

22

       **IT IS SO ORDERED**.

23

24

DATED:  October 17, 2011

                        WILLIAM ALSUP

25

                        UNITED STATES DISTRICT JUDGE

26

27

G:\PRO-SE\WHA\HC.10\CAPE5688.RUL.wpd

28